*The Honorable John C. Coughenour*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| ESTATE OF ADAM CHRISTOPHER JENSEN, by the Personal Representative PAULA DOW; and PAULA DOW, an individual, | NO. C20-1320-JCC |
| | **SNOHOMISH COUNTY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL CLAIMS** |
| Plaintiffs, | |
| vs. | **NOTE ON MOTION CALENDAR: Friday May 7, 2021** |
| COUNTY OF SNOHOMISH, a municipal corporation; SNOHOMISH COUNTY DEPUTY SHERIFF WILLIAM WESTSIK, and his marital community; SNOHOMISH COUNTY DEPUTY SHERIFF KEVIN PELLEBOER, and his marital community; SNOHOMISH COUNTY SHERIFF'S SERGEANT CHAD GWORDSKE, and his marital community; EVERETT CITY POLICE DEPARTMENT, a municipal corporation; "DOE(S) 1-100", employees of the COUNTY OF SNOHOMISH and/or EVERETT CITY POLICE DEPARTMENT; and "CORPORATION(S) XYZ 1-100," | |
| Defendants. | |

//

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

## INTRODUCTION AND RELIEF REQUESTED

Defendants Snohomish County, Deputy William Westsik, Deputy Kevin Pelleboer, and Sergeant Chad Gwordske ("Snohomish County Defendants") move for summary dismissal of all federal claims against them contained in Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 56. Defendants are entitled to qualified immunity because the alleged unlawfulness of their conduct was not clearly established at the time of the events at issue and the force used was not unconstitutionally excessive. Plaintiff has also not alleged a sufficient basis to support a claim of failure to intervene. The Court should dismiss Plaintiff's federal claims in their entirety with prejudice. If the Court does so, the Court should decline to exercise pendent jurisdiction over the remaining state law claims, as such claims are better suited to state court. The Court should instead dismiss those claims without prejudice so that Plaintiff may refile in a more appropriate venue, if she so chooses.

## EVIDENCE RELIED UPON

This motion is based on the pleadings and papers filed herein, as well as the declarations of William Westsik, Kevin Pelleboer, Chad Gwordske, Nicole Stone, and Katherine Bosch, and exhibits attached thereto.

## FACTS

### A. Events of August 28, 2018

On August 28, 2018, at 1:36 a.m., Isabel Craig called 911 for assistance. Pelleboer Decl., ¶ 4. Ms. Craig wanted her boyfriend, Adam Jensen, to take his things and leave her residence, located in Stanwood, Washington. *Id.* Snohomish County Sheriff's Deputy Kevin Pelleboer was dispatched to Ms. Craig's residence. Deputy Pelleboer had been with the Sheriff's Office as a

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

Deputy for five years at the time, having been hired with the SCSO after working three years as a trooper with the Washington State Patrol. Pelleboer Decl., ¶ 1. He had not previously had any interactions with Ms. Craig. *Id.*

At the time Deputy Pelleboer arrived at the residence, he did not yet know Mr. Jensen's name, and had thus not been able to run a background check on Mr. Jensen in the law enforcement database available to him. *See* Pelleboer Decl., ¶ 8. When Deputy Pelleboer approached the residence, Ms. Craig allowed him to enter. *Id.* at ¶ 5. The residence is a townhouse, with the kitchen and living room on the ground floor. A flight of stairs off of the living room leads to the second floor, where there is a short landing before the hallway turns to the left, leading to a master bedroom. *Id.* Three additional bedrooms are to the right of the landing, with a small laundry area just to the left of the landing. *Id.* A diagram Deputy Pelleboer drew of the layout of the second story and a diagram furnished by investigators to Deputy Westsik which he marked are attached as exhibits to their declarations. *See* Pelleboer Decl., Ex. A; Westsik Decl., Ex. A.

Ms. Craig allowed Deputy Pelleboer to enter the upstairs portion of the townhouse, where he saw through the open doors of the additional bedrooms to the right of the landing that there were young children inside. When Deputy Pelleboer spoke to Ms. Craig, she indicated that Mr. Jensen had moved into the Stanwood residence the week prior, but she wanted him to leave, and he was refusing. Deputy Pelleboer noted Ms. Craig's demeanor was calm. Pelleboer Decl., ¶ 6.

However, when Deputy Pelleboer spoke to Mr. Jensen, he was agitated. Mr. Jensen was yelling and confrontational. He told Deputy Pelleboer that the deputy could not force him to leave because he lived there. Because there was no allegation of domestic violence which would have triggered a mandatory arrest if probable cause existed, Deputy Pelleboer suggested to Ms. Craig

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

and Mr. Jensen that they separate for the night and revisit the issue at a later time. Pelleboer Decl., ¶ 7. Mr. Jensen finally relented, gathered some of his things, and went out to his car. When Deputy Pelleboer returned to his patrol vehicle, he ran the license plate number on Mr. Jensen's vehicle. Deputy Pelleboer learned that Mr. Jensen had had very recent prior contacts with Everett Police as a result of threatening to kill himself. Pelleboer Decl., ¶ 8.

### B.  Events of September 9, 2018

Twelve days later, on September 9, 2018, at approximately 2:40 a.m., Isabel Craig called 911 to report that her boyfriend Adam Jensen had pushed her off their bed in her home in Stanwood, Washington. Pelleboer Decl., ¶ 9 and Ex. B at 2:14-17; Westsik Decl., ¶ 5. Ms. Craig's three minor children were home at the time of the reported incident and in their bedrooms upstairs. Pelleboer Decl., ¶ 10. Ms. Craig also reported to the 911 dispatcher that Mr. Jensen had a knife and was suicidal. Pelleboer Decl., ¶ 9; Westsik Decl., ¶ 5; Gwordske Decl., ¶ 7.

All of this was communicated over the Snohomish County Sheriff's Office radio dispatch. The dispatcher first reported the incident:

DISPATCHER: 31 Sam, Stanwood units holding a physical DV.   [Address redacted], male versus female.

Pelleboer Decl., Ex. B at 2:4-5. Deputy Kevin Pelleboer was on duty that night and recognized the address from his contact with Ms. Craig and Mr. Jensen twelve days earlier. He radioed in with his call sign and indicated that he was en route, as did Deputy William Westsik.  Pelleboer Decl., ¶ 9-10 and Ex. B at 2:6-13; Westsik Decl., ¶ 4-5. Deputy Westsik, a police officer for over twenty years who had joined the SCSO in 2017 after moving to Washington from Arizona, was

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

assigned to the City of Stanwood police at the time.[1] Westsik Decl., ¶ 1-3. The Dispatcher than reported:

> DISPATCHER: Units en route to the physical DV, RP reported that the male pushed her off the bed. It's an Adam – I think the last name is going to be Jensen. Born in '75. White male, dark brown hair. Call taker has an open line, arguing now.

Pelleboer Decl., Ex. B. at 2:14-17. Deputy Pelleboer responded over the radio, "Just for info, last time I dealt with him he was not very friendly." *Id.* at 2:18-19. The Dispatcher then reported:

> DISPATCHER: Units en route to [Address redacted], call has been updated to a DV with a weapon. Female says the male has a knife on him and said he is going to die tonight.

*Id.* at 2:24-3:  Based on his knowledge from the previous week, Deputy Pelleboer responded via the radio to the dispatcher and the other officers en route to the scene, "He does have a history of suicide." *Id.* at 3:2-3. The dispatcher also advised there were children in the home. *Id.* The Dispatcher next reported to the responding officers:

> DISPATCHER: Male is asking, "Do you want me to die? Do you want me to die by police?"

Pelleboer Decl., Ex. B at 3:13-14. Deputy Westsik arrived at the residence first. Westsik Decl., ¶ 7. While waiting for the other deputies to arrive, Deputy Westsik exited his patrol vehicle and stood near the residence, listening. He could hear Ms. Craig and Mr. Jensen arguing; while Ms. Craig sounded calm, Mr. Jensen's tone was agitated. *Id.*

When Deputy Pelleboer arrived at the residence, Deputies Pelleboer and Westsik had a brief discussion while still outside and determined that Deputy Pelleboer would serve as "less lethal" cover and Deputy Westsik would serve as "lethal" cover. Westsik Decl., ¶ 8; Pelleboer

---

[1] The City of Stanwood contracts with the Snohomish County Sheriff's Office for police services.  Westsik Decl., ¶ 3.

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

Decl., ¶ 12. Deputies are trained to make this designation when time allows when dealing with a potentially combative or violent subject in order to ensure that the minimum use of force required will be used but that they are protected in the event something goes wrong. Westsik Decl., ¶ 8; Pelleboer Decl., ¶ 12.

Deputies Westsik and Pelleboer knocked on the door, and Ms. Craig answered. Deputy Westsik asked Ms. Craig to step outside to speak with them about what happened. Ms. Craig declined, saying that she had children in the house. Pelleboer Decl., ¶ 13; Westsik Decl., ¶ 9. Deputy Pelleboer was concerned for the welfare of the children and the risk presented to them of being alone with Mr. Jensen with a knife, so when Ms. Craig let them inside, they immediately followed. Pelleboer Decl., ¶ 13. She began leading them through the kitchen and living room on the ground floor to the base of the stairs leading to the second story. Ms. Craig had a "nanny cam" (video camera) set up in the corner of her living room which was motion activated; the camera recorded Ms. Craig letting the deputies inside and leading them upstairs. Stone Decl., Ex. B (filed under seal as Dkt. 36) (DOW 000027 Timestamp 00:46 - 01:14).

As Deputies Pelleboer and Westsik entered the residence on the ground floor, Deputy Pelleboer, who was familiar with the residence as a result of his interactions with Ms. Craig and Mr. Jensen there on August 28, 2018, described the layout of the bedrooms above them to Deputy Westsik. Pelleboer Decl., ¶ 15; Westsik Decl., ¶ 10. On the video, Deputy Pelleboer is seen gesturing to the ceiling above while describing the bedroom set up to Deputy Westsik. Dkt. 36 (DOW 00027 Timestamp 00:56 – 01:03). Deputy Pelleboer had his taser out while Deputy Westsik had his hand on his firearm in its holster, consistent with their agreed designations of "less lethal" and "lethal" cover. *See id.*

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

Ms. Craig went up the stairwell first, followed by Deputy Pelleboer and then Deputy Westik. Pelleboer Decl., ¶ 16; Dkt. 36 (DOW 000027 Timestamp 01:03 – 01:15). As Deputies Pelleboer and Westsik came to the top of the stairs on the second floor, Ms. Craig entered her son's bedroom to the right of the landing. Pelleboer Decl., ¶ 17; *see also* Dkt. 1 (Plaintiff's Complaint) at 6. Once Ms. Craig was inside the bedroom, Deputy Pelleboer took a few steps down the hall and called out, "Hey Adam, it's the police. Come out and talk to us." Pelleboer Decl., ¶ 18; Dkt. 36 (DOW 000077Timestamp 01:23 – 01:26). Deputy Westsik was behind him in the hallway. Westsik Decl., ¶ 12.

Deputy Pelleboer heard Mr. Jensen respond, "I'm not gonna do this again. I'm over this. I'm done." Pelleboer Decl., ¶ 19. Deputy Westsik remembered Mr. Jensen saying, "I'm not fucking around this time!" Westsik Decl., ¶ 13. Mr. Jensen then came out of the bedroom at a "fast walk." Pelleboer Decl., ¶ 19; Westsik Decl., ¶ 14-15. Mr. Jensen was wearing only underwear and was walking directly toward Deputies Pelleboer and Westsik and holding a knife with a long skinny blade in his right hand down by his side. Westsik Decl., ¶13-14; Pelleboer Decl., ¶ 20. Deputy Pelleboer began to back up; because the hallway was narrow, Deputy Westsik backed up as well, around the corner that creates the landing and toward the top of the stairs, losing sight of Mr. Jensen and Deputy Pelleboer behind the wall. Westsik Decl., ¶ 15.

Mr. Jensen did not stop coming toward Deputy Pelleboer at a fast walk with the knife in his hand; as he was walking toward Deputy Pelleboer, Mr. Jensen raised the knife up to the level of his waist, with the tip pointing toward Deputy Pelleboer. Pelleboer Decl., ¶ 21. Fearful that Mr. Jensen was going to stab him or Deputy Westsik, to stop Mr. Jensen from advancing on his colleague and him, Deputy Pelleboer deployed his taser in probe mode. *Id.* The taser application

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 7
USDC #C20-1320-JCC

**SNOHOMISH COUNTY**
**PROSECUTING ATTORNEY - CIVIL DIVISION**
**Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

was unsuccessful in stopping Mr. Jensen's advance.  Deputy Pelleboer backed up around the corner onto the small landing at the top of the stairs, on the other side of Deputy Westsik, throwing his taser behind him and reaching for his firearm.  *Id.* Mr. Jensen came around the corner immediately after Deputy Pelleboer, chasing him with the knife.  Westsik Decl., ¶ 18.  As Mr. Jensen reentered Deputy Westsik's line of sight, Deputy Westsik noted the position in which Mr. Jensen was holding the knife had now changed. He was no longer holding it by his side, but was instead holding it out in front of him at waist level with his elbow bent at ninety degrees with the tip of the knife pointing out. *Id.* Once Deputy Westsik saw the knife again, he recognized it as a drywall knife. Westsik Decl., ¶ 19. At the time, Deputy Westsik was actually in the middle of a home remodel and had purchased a similar knife the week prior. *Id.* He knew from working with it in his home that it could cut through drywall "like butter." He knew it could therefore do some serious and potentially fatal damage to a human being. *Id.*

Mr. Jensen continued to advance towards the deputies while holding the knife in his right hand. Westsik Decl., ¶ 21; Pelleboer Decl., ¶ 22. Deputy Westsik yelled, "DROP IT! DROP IT!" but Mr. Jensen did not do so. Westsik Decl., ¶ 21; Dkt. 36 (DOW 000027 Timestamp 01:32). Deputy Westsik was gravely concerned that Mr. Jensen was going to attempt to stab him, Deputy Pelleboer, or both, and thus he had no choice but to fire his weapon. Mr. Jensen was only a few feet away when Deputy Westsik fired his .40 caliber duty firearm four times; three of the shots struck his chest and one struck his foot.  Westsik Decl., ¶ 21.

Mr. Jensen dropped the knife near the top of the stairs and fell forward. Westsik Decl., ¶ 22. Mr. Jensen's body fell near the ledge of the stairs and slid down the stairs to the ground floor, where it came to rest. Gwordske Decl., ¶ 11; Pelleboer Decl., ¶ 23. The knife, which was later

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 8
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

recovered near where Mr. Jensen had been holding it, was serrated and approximately 8 to 12 inches long with a pointed end.  Bosch Decl., Ex. A.

While described in great detail here, these events occurred in incredibly rapid succession. *See* Dkt. 36. Approximately 6.4 seconds pass between Deputy Pelleboer saying, "Adam, it's the police" and the sound of the taser deployment. *Id.* (DOW 000027 Timestamp 01:24 - 01:31). Approximately 2 seconds passed between the sound of the taser deployment and Deputy Westsik saying "DROP IT! DROP IT!" *Id.* (DOW 000027 Timestamp 01:31 - 01:33). The time between the taser deployment and the first gunshot was approximately 2.8 seconds. *Id.* (DOW 000027 Timestamp 01:31 – 01:34).

Sergeant Gwordske had arrived on the scene shortly after Deputy Pelleboer and Deputy Westsik entered the residence. Gwordske Decl., ¶ 9. He entered the front door and followed the sound of voices. He was at the base of the stairs and heard one of the deputies tell Mr. Jensen to come out of the room and talk. *Id.* Sergeant Gwordske then heard rapid movement, the sound of a taser deploy, and saw Deputy Pelleboer move back towards the top of the stairs. He then heard what he thought was two gunshots. *Id.* at ¶ 10. He saw Mr. Jensen collapse at the top of the stairs and fall down the stairs. He estimated the time between the deputy's initial words to Mr. Jensen and the gunshots was a couple seconds. *Id.* at ¶ 10-11.

Sergeant Gwordske immediately announced over the radio shots had been fired. Gwordske Decl., ¶ 10.  He remained on scene as investigators arrived in order to secure the scene. He walked Deputy Westsik outside and collected the firearm used in the incident – a .40 caliber handgun. *Id.* at ¶ 16. When medics arrived on the scene, they concluded nothing could be done for Mr. Jensen, and called a doctor to announce the time of death. Dkt. 36 (DOW 000029).

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION**
**Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

The investigators who responded to the residence located and collected the relevant video footage from the motion sensor video camera for evidentiary purposes. Stone Decl., Ex. B. (Dkt. 36).  Investigators learned that the camera had been pointed towards the downstairs living room and had a view of the bottom of the stairwell and the door out of the kitchen. *Id.*

On the video, Ms. Craig is observed on the phone with the dispatcher. Dkt. 36 (DOW 0000 27 Timestamp 00:33). She opens the door for the two deputies. Deputy Pelleboer enters first holding a Maglite flashlight in his left hand and his taser in his right hand. He explains the layout of the upstairs bedrooms to Deputy Westsik, who enters behind him. Deputy Westsik's left hand is on the grip of his firearm but the weapon remains in the holster. Dkt. 36 (DOW 000027 Timestamp 01:00). The video skipped and Sergeant Gwordske walks through the living room towards the stairs.  Deputy Pelleboer can be heard calling out, "Adam, it's the police." When Sergeant Gwordske walks to the base of the stairs, a loud "pop" is heard, which is attributed to the taser deployment.  Unintelligible sounds are heard, followed by a male voice yelling, "DROP IT! DROP IT!" followed by the sounds of four gunshots. Sergeant Gwordske is observed taking a step away from the stairs and is heard radioing "shots fired." A male voice is heard gasping or moaning. Dkt. 36 (DOW 000027 Timestamp 01:36). Deputy Pelleboer is observed coming down the stairs. Sounds consistent with Adam Jensen falling down the stairs are audible as are sounds consistent with something coming to rest at the bottom of the stairs. Sergeant Gwordske looks up the stairwell at Deputy Westsik and asked, "Are you guys okay?" Sergeant Gwordske looked at Deputy Pelleboer and asks, "Who shot?" Deputy Pelleboer responds, "He did," gesturing towards Deputy Westsik.  Deputy Pelleboer then said, "I tried less lethal but it

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 10
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

didn't hit." Deputy Westsik said, "Yeah, he just kept coming, you know." *Id.* (DOW 000027 Timestamp 01:59 – 2:09).

## PROCEDURAL POSTURE

On September 2, 2020, Ms. Dow filed this Complaint, which contains no fewer than *eleven* separate claims for relief. Dkt. 1. Plaintiff asserts the following federal cause of action against Defendants Westsik, Pelleboer, Gwordske, and Snohomish County, pursuant to 42 U.S.C. § 1983: 1) Violation of Fourth Amendment, unreasonable seizure; 2) Violation of Fourth Amendment, unreasonable use of excessive and deadly force; 3) Failure to prevent civil rights violation/failure to intervene; and 4) Violation of Fourteenth Amendment (loss of right to enjoy the companionship and society of her adult child). Snohomish County Defendants now move for summary dismissal of all of these claims.

## ISSUES

1. Did the law clearly establish beyond debate that shooting an assailant rapidly approaching officers with a knife who did not comply with commands to stop and did not respond to the use of less lethal force was unconstitutional?  No.

2. Is Defendant Snohomish County liable under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)? No.

3. Has Plaintiff alleged a sufficient basis to support a failure-to-intervene claim? No.

4. Should the Court exercise pendent jurisdiction over the remaining state law claims when such claims are more appropriately heard in state court?  No.

## ANALYSIS

### A.   Summary Judgment Standard.

Under Fed. R. Civ. P. 56, on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, and then ask whether there is any

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 11
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

"genuine dispute as to any material fact" under the governing substantive law. As to materiality, the Supreme Court has held that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must determine whether there is a genuine issue for trial. *Id.* at 249.

**B.**  **The Use of Force by the Individually Named Defendants was Objectively Reasonable Under the Totality of the Circumstances and the Defendants are Entitled to Qualified Immunity.**

For a claim under 42 U.S.C. § 1983 to proceed, at least two elements must be met: (1) the defendant must be a person acting under color of state law, and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. Bod. Of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980).

In this case, the individually named defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).  To defeat the defense of qualified immunity, a plaintiff must show (1) that each defendant caused a deprivation of a constitutional or statutory right, and (2) that such right was clearly established at the time of the alleged misconduct. *See Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir.

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 12
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

2016). A court evaluating a qualified immunity defense to a § 1983 claim may decide for itself which step of the analysis to undertake first, as failing either one will negate a plaintiff's eligibility to recover damages. *Id.*

Here, the individually named defendants are entitled to qualified immunity under both prongs. There was no clearly established precedent prohibiting the use of deadly force against Mr. Jensen. And Deputy Westsik's use of force was objectively reasonable under the totality of the circumstances. As discussed in more depth below, the federal claims against the individually named defendants should be dismissed.

1. *There was no clearly established precedent prohibiting the use of force against Mr. Jensen.*

The Deputies' use of force in this case was not clearly established as unlawful at the time Adam Jensen died. To be "clearly established," a legal principle must have a sufficiently clear foundation in then-existing precedent; the rule must be settled law. It is not enough that the rule is suggested by then-existing precedent. Precedent must be clear enough that every reasonable official would interpret it to establish the particular rule plaintiff seeks to apply. *Columbia v. Esby*, 138 S.Ct. at 589-90. Whether a right was clearly established is a question of law. *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017). Clearly established law should not be defined at a high level of generality, but must be particularized to the facts of the case. *Ashcroft v. al-Kidd*, 563 U.S. at 742; *White v. Pauly*, 580 U.S. __, 137 S.Ct. 548, 552 (2017); *Jones v. Las Vegas Metropolitan Police Dept.*, 873 F.3d 1123, 1130 (9th Cir. 2017).

Defendants bear the burden of pleading the defense of qualified immunity, but the burden then shifts to the Plaintiff to show that the official violated a right so clearly established "that

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 13
USDC #C20-1320-JCC

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011); *Emmons v. City of Escondido*, 921 F.3d 1173, 1174 (9th Cir. 2019). A plaintiff must prove that binding case authority, that is, "precedent on the books," "placed *beyond debate* the unconstitutionality of" the officials' actions "as those actions unfolded in the specific context of the case at hand." *Hamby*, 821 F.3d at 1090 (emphasis added) (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044-45 (2015)). Here, Plaintiff bears the burden of identifying existing precedent where an officer acting under similar circumstances was held to have violated the Fourth Amendment, or he must show that the force used was so plainly excessive that as an objective matter, Deputies Pelleboer and Westsik would have been on notice that they were violating the Fourth Amendment. *See Plumhoff v. Rickard*, 572 U.S. 765, 134 S.Ct. 2012 (2014); *Emmons v. City of Escondido*, 921 F.3d 1173, 1174 (9th Cir. 2019). In other words, if the right against the force used in this case was not clearly established on September 9, 2018, these officers receive qualified immunity. *See S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017).

Allegations that law enforcement officers have used excessive force in the arrest or detention context are examined under the Fourth Amendment and its reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989). When considering the defense of qualified immunity, the court considers only the facts that were knowable to the defendant officers. *White v. Pauly*, 580 U.S. __, 137 S.Ct. 548 (2017); *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466 (2015).

A recent Ninth Circuit opinion is instructive as to the clearly established law. In *Ventura, et al. v. Rutledge, et al.*, 978 F.3d 1088 (2020), a panel affirmed the district court's grant of

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 14
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

summary judgment to a police officer on the basis of qualified immunity when she shot the plaintiff's son, Omar Ventura. The undisputed facts in *Ventura* are these: (a) the police officer was responding to a violent domestic disturbance where Omar had hit a woman and his own mother and smashed the window of the woman's car; (2) Omar was approaching the woman with a knife drawn; (3) Omar continued his advance while ignoring multiple commands from the officer to stop and a warning that the officer would shoot; and (4) Omar had advanced to within 10-15 feet of the woman when the officer fired. *Ventura*, 978 F.3d at 1090-91. The Ninth Circuit found that no controlling precedent had clearly established that Omar's right to be free from the excessive use of deadly force by police would be violated when he was shot and killed as he advanced toward an individual he had earlier that day assaulted, while carrying a drawn knife and while defying specific police orders to stop. *Id.* at 1091-92 (because the unconstitutional nature of the officer's conduct was not clearly established at the time of the events at issue here, the court concluded that under Supreme Court precedent the officer was entitled to summary judgment on qualified immunity grounds with respect to plaintiff's claims brought under the Fourth Amendment).

The panel in *Ventura* relied upon the decision in *Kisela v. Hughes*, 584 U.S. __, 138 S. Ct. 1148, 1152 (2018), where the Supreme Court considered a similar situation. In *Kisela*, a police officer (Kisela) sought summary judgment on the ground that he was entitled to qualified immunity for his alleged use of excessive force in shooting the respondent (Hughes). After Officer Kisela received a report that Hughes had been "engaging in erratic behavior with a knife," he observed her holding a large kitchen knife as she took steps toward another woman (Chadwick) who was standing nearby. *Id.* at 1151. Hughes stopped no more than six feet from

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

Chadwick. *Id.* Hughes refused to drop the knife, despite officers' repeated commands for her to do so. *Id.* Fearing that Hughes posed an imminent threat to the other woman, Kisela fired four shots through a chain link fence and injured Hughes. *Id.* Although Hughes appeared calm and Chadwick stated in an affidavit that she did not feel endangered at any time, *id.*, the majority concluded that at the time of the shooting, Kisela's actions in shooting Hughes did not violate clearly established law, and that qualified immunity therefore shielded Kisela from liability. *Id.* at 1153. In sum, the *Kisela* court concluded that, as of 2010, it was not clearly established in the Ninth Circuit that the use of deadly force was unconstitutional where the decedent was "armed with a large knife," had advanced "within striking distance" of another individual, and was ignoring the officer's orders to drop the knife. *Kisela*, 138 S. Ct. at 1154.

Here, the facts are even more compelling than they were in both *Ventura* and *Kisela*. Here, officers were responding to a call regarding a domestic violence assault where the assailant was known to be both suicidal and armed with a knife while there were children present in the home. One of the officers had had an interaction with Mr. Jensen the previous week where Mr. Jensen was "not friendly" towards police and that officer was aware of his history of suicide attempts, which he shared with the other responding officers via radio. Within moments of their arrival in the home, Mr. Jensen came at the deputies with a weapon held in an attack position; when he began his "fast walk" towards the deputies from the master bedroom he was already closer to them then Ventura had been to the officer when she shot him.

Deputy Westsik issued a verbal command to drop the weapon; Mr. Jensen did not comply and was rapidly closing the gap between them, in a very small physical space. Additionally, unlike in *Ventura* and *Kisela*, here Deputy Pelleboer also attempted to use less lethal force to stop

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

Mr. Jensen before the use of lethal force. Deputy Pelleboer tried to stop Mr. Jensen using the less lethal means of a taser – but Mr. Jensen **did not stop**.

Given all of these facts – the physical proximity of Mr. Jensen, the rapid sequence of events, Mr. Jensen's failure to comply with commands, and the failure of less lethal means to stop Mr. Jensen's approach while armed with a deadly weapon – Deputy Westsik had no choice but to use lethal force against Mr. Jensen to stop him from harming or killing either of the deputies with the knife. Given that these facts present an even more dangerous situation than the one presented by the facts under *Ventura* or *Kisela*, it was not clearly established in 2018 that Deputy Westsik's use of deadly force against Mr. Jensen was excessive. The officers in those cases were entitled to qualified immunity – so too are the officers in this case.

The deputies tried other means to stop Mr. Jensen in a very short period of time that were unfortunately unsuccessful; Deputy Westsik had no choice but to stop him using lethal force; there was no clearly established precedent at the time of this incident establishing beyond debate that Deputy Westsik's conduct was unlawful. Both he, Deputy Pelleboer, and Sergeant Gwordske (who had no involvement with the actual use of force) are entitled to qualified immunity.

> 2. *The use of deadly force against Mr. Jensen was objectively reasonable under the totality of the circumstances.*

Plaintiffs have asserted a Fourth Amendment claim relating to the use of deadly force against Mr. Jensen.[2] Under the available Ninth Circuit precedent, the deadly use of force in this case, while tragic, was objectively reasonable under the totality of the circumstances to protect

---

[2] Plaintiff has alleged multiple constitutional violations; however, once a use of force is deemed reasonable under *Graham*, it may not be found unreasonable by reference to some separate constitutional violation.  "If there is no excessive force claim under *Graham*, there is no excessive force claim at all."  *County of Los Angeles, Calif. v. Mendez*, __ U.S. __, 137 S.Ct. 1539, 1547 (2017).

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION**
**Robert Drewel Bldg., 8ᵗʰ Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

human life. The "Supreme Court has made clear that claims of excessive force during an arrest, investigatory stop, or other seizure of a free person must be brought under the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 388, 394-95, 109 S.Ct. 1865 (1989). Use of force is a seizure that is subject to the Fourth Amendment's reasonableness requirement. *Ames v. King Cnty., Wa.*, 846 F.3d 340, 348 (2017). Under the Fourth Amendment, officers may use such force as is "objectively reasonable" under the circumstances. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989)).

In evaluating whether the force used was objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Ames*, 846 F.3d at 348. In performing this calculus, the court must "assess the quantum of force used" and then "measure the governmental interests at stake" by considering the three *Graham* factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

"These factors, however, are not exclusive. Rather, [the court] examine[s] the totality of the circumstances" and considers whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). This determination is made "from the perspective of a reasonable officer on the scene" and not "with the 20/20 vision of hindsight." *Ames*, 846 F.3d at 348 (*quoting Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "[P]olice officers are often forced to make split-second judgments—in circumstances that are tense,

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 18
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

Whether the suspect poses a threat to the safety of officers or others is "the most important single element of the three specified factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). Specifically, the Supreme Court has stated that the Fourth Amendment permits use of deadly force to apprehend a fleeing suspect where there is "probable cause to believe the suspect poses a threat of serious physical harm." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Such force is justified if the officer can provide "an articulable basis for believing that [the suspect] was armed or that he posed an immediate threat to anyone's safety." *Chew*, 27 F.3d at 1441.

Mr. Jensen posed an immediate threat of harm to Deputy Westsik's life. Mr. Jensen made suicidal statements, failed to respond to a taser deployment, failed to comply with commands to drop the knife, which he was holding in an attack position, and was quickly closing the distance between himself and Deputy Westsik in a relatively small space. The test is not what Deputy Westsik believed, but whether a reasonable officer, knowing and perceiving what Deputy Westsik knew and perceived, would have been justified in doing under the totality of the circumstances. *Graham*, 490 U.S. at 396. Given these facts, a reasonable officer in Deputy Westsik's position would have believed that the use of deadly force was necessary under the totality of the circumstances in light of the immediate threat of harm Mr. Jensen posed to Deputy Westsik's own life as well as to others.

The other Graham factors also militate in favor of the reasonableness of the force. Regarding the severity of the crime at issue, the deputies were investigating whether there was probable cause to believe that Mr. Jensen had committed a domestic violence assault, which is an

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8ᵗʰ Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

offense for which there is a mandatory duty to arrest in the state of Washington.  *See* RCW 10.99.030. Mr. Jensen was also actively resisting arrest, as the officers had announced themselves and, rather than cooperate, Mr. Jensen chose to come at them with a weapon and to ignore their commands to drop it. Deputy Westsik's use of deadly force was objectively reasonable under the totality of the circumstances – indeed, as discussed above, Deputy Westsik had no other choice than to use deadly force. Accordingly, the officers' actions do not amount to a constitutional violation, and thus they are also entitled to qualified immunity on this basis as well as under the "clearly established" prong.

In the alternative, as neither Deputy Pelleboer nor Sergeant Gwordske is alleged to have used deadly force against Mr. Jensen, both should be dismissed from this case. Deputy Pelleboer's use of force – the taser deployment – was objectively reasonable under the circumstances, given that a suicidal assailant was approaching him with a knife after he had identified himself as police. Sergeant Gwordske – referred to in the Complaint only as the "Bystander Deputy" – is not alleged to have used any force whatsoever. All claims arising from use of force allegations against Deputy Pelleboer and Sergeant Gwordske should be dismissed.

## C. There Are No Facts to Support a *Monell* Claim Against Snohomish County.

Plaintiffs also assert a *Monell* claim against Snohomish County for excessive use of force, but as there are no facts to support such a claim, it should be dismissed. A local government entity is only liable under § 1983 when the constitutional deprivation at issue is the result of a specific governmental policy, practice, or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy.  *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978).

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 20
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

A plaintiff can establish municipal liability under 42 U.S.C. § 1983 in one of three ways. *Gillette v. Delmore,* 979 F.2d 1342, 1346 (9th Cir.1992). "First, the plaintiff may prove that a [government] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Id.* (internal quotations and citation omitted). "Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy." *Id.* (*citing Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). "Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1346–47 (*citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

In their Complaint, Plaintiffs assert generally that "[a] contributing cause of Decedent Jensen's death and his mother's loss of companionship with him and the violation of their federal constitutional rights was the unconstitutional policies, practices, and operating procedures of Defendant Snohomish County Sheriff's Office." Dkt. 4 at 15. This assertion fails for a number of reasons. First, it assumes that there was a constitutional violation, which, as discussed above, there was not. Absent a constitutional violation, the mere fact that a municipality's policies may have been unconstitutional is not sufficient to impose liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571 (1986); *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996) (arrestee could not recover on § 1983 claim against a police chief for maintaining an allegedly unconstitutional policy on the use of police dogs, absent showing that the individual arresting

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 21
USDC #C20-1320-JCC

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION**
**Robert Drewel Bldg., 8ᵗʰ Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

officers violated the arrestees constitutional rights through the use of police dogs); *Estate of Diaz v. City of Anaheim*, 840 F.3d 592 (9th Cir. 2016).

Second, even assuming for the sake of argument, that there was a constitutional violation,[3] Plaintiff has not specifically identified those policies, practices, or procedures she alleges were unconstitutional, nor explained the connection between such policies and the alleged constitutional violation at issue here. Nor will Plaintiff be able to do so in response to this motion, as Snohomish County's use of force policies, practices, and procedures are not unconstitutional. Plaintiff makes no allegation that an official with final policy-making authority took some action here, nor that an official with policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Accordingly, Plaintiff cannot support a claim of municipal liability, and all of the federal claims she asserts against the County should be dismissed.

### D. Plaintiff Has Failed to State a Claim for Relief on a Theory of Failure to Intervene.

In her Complaint, Plaintiff alleges a claim for failure to intervene against individually named defendants Westsik, Pelleboer, Gwordske, as well as Snohomish County.[4] Presumably, this claim is primarily aimed against defendant Chad Gwordske, who was merely present in the house at the bottom of the stairs while the use of force was occurring at the top of the stairs. But Plaintiff has not alleged sufficient facts to support such a claim against any of the individually named defendants. "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). Accordingly, if an officer fails to intervene when fellow officers use excessive

---

[3] Defendants specifically deny any constitutional violations.
[4] To the extent this claim is asserted against Snohomish County, such a claim fails for lack of a basis to support a finding of municipal liability, as discussed in the preceding section.

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

force, despite not acting to apply the force, he would be responsible for violating the Fourth Amendment. *United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994) ("Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights."), *rev'd in part on other grounds*, 518 U.S. 81 (1996).

However, to state a Fourth Amendment claim for failure to intervene, a plaintiff must provide specific plausible factual allegations demonstrating that the defendant officer had "a realistic opportunity" to intercede. *See Cunningham*, 229 F.3d at 1289; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (to state a claim for relief, a claim must be factually plausible – that is, the plaintiff must plead sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

The Complaint in this case is devoid of any factual allegations from which the Court can infer that Sergeant Gwordske could actually observe that Deputy Pelleboer and Deputy Westsik's use of force was excessive (which, for the reasons discussed above, it was not). Nor can the Court infer that Sergeant Gwordske had a "realistic opportunity" to intercede, given that the time between the initial statement to Mr. Jensen and the use of deadly force was a matter of seconds, and Sergeant Gwordske was at the bottom of the stairs in an area where he could not see precisely what was happening.

Presuming, for the sake of argument, that the use of force was unlawful, Sergeant Gworske did not have a reasonable or realistic opportunity to stop it, given his physical distance and the rapidity of the events. Plaintiff's allegation of failure to intervene against Sergeant

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8ᵗʰ Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

Gwordske is unsupported by the facts and no reasonable jury could find otherwise. The Court should dismiss this claim against Sergeant Gwordske in its entirety.

Nor do the facts support a failure to intervene claim against Deputies Pelleboer or Westsik. Again, presuming only for the sake of argument that the use of deadly force by Deputy Westsik was unlawful (which it was not), the facts demonstrate that because the events from the time Mr. Jensen emerged from the bedroom to the time the first shot was fired was only a matter of seconds, Deputy Pelleboer would not have had a realistic opportunity to take any kind of intervening action. Why this claim is asserted against Deputy Westsik is not clear, but for the same reasons the facts do not support a failure to intervene claim against Deputy Pelleboer and Sergeant Gwordske, so too do the facts not support such a claim against Deputy Westsik. The claim of failure to intervene should be dismissed in its entirety.

### E. The Court Should Decline to Exercise Pendent Jurisdiction Over the Remaining State Law Claims and Dismiss Those Claims Without Prejudice.

A federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–727, 86 S.Ct., at 1139 (1966).When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *Id.*

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

As articulated by the Supreme Court, the doctrine of pendent jurisdiction is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values. *Id.* Here, should this Court grant Snohomish County Defendants' motion for summary judgment as to the federal claims, the remaining claim are all based in Washington state law. *See* Dkt. 1 at 18-24. As such, these claims are best addressed in state court. This Court should thus dismiss the remaining state law claims without prejudice so that Plaintiff may refile in state court should she choose to do so.

## CONCLUSION

Officers William Westsik, Kevin Pelleboer, and Chad Gwordske are entitled to qualified immunity. No clearly established precedent placed the unconstitutionality of their actions beyond debate such that a reasonable officer would understand that the force used against Mr. Jensen was unconstitutional. Additionally, Plaintiff has failed to allege sufficient facts to support a claim of failure to intervene. Accordingly, all of the federal claims against Snohomish County Defendants should be dismissed in their entirety with prejudice. The remaining state law claims should be dismissed without prejudice so that Plaintiff may file suit regarding these claims in a more appropriate venue.

DATED this __1st__ day of April, 2021.

ADAM CORNELL
Snohomish County Prosecuting Attorney

By: __/s/ Katherine H. Bosch_____
DEBORAH A. SEVERSON, WSBA #35603
KATHERINE H. BOSCH, WSBA #43122
Deputy Prosecuting Attorneys
Snohomish County Prosecutor's-Civil Division
3000 Rockefeller Avenue, M/S 504
Everett, WA 98201

SNOHOMISH COUNTY DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT- 25
USDC #C20-1320-JCC

SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON 98201-4060
(425)388-6330/FAX: (425)388-6333

Ph: (425) 388-6330 / Fax: (425) 388-6333
deborah.severson@co.snohomish.wa.us
kbosch@snoco.org
*Counsel for Defendants County of Snohomish,*
*William Westsik, Kevin Pelleboer and Chad*
*Gwordske*

**SNOHOMISH COUNTY**
**PROSECUTING ATTORNEY - CIVIL DIVISION**
**Robert Drewel Bldg., 8th Floor, M/S 504**
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333

1

## DECLARATION OF SERVICE

2

I declare that I am an employee of the Civil Division of the Snohomish County Prosecuting

3

Attorney, and that I caused to be delivered the foregoing document on the following party by the

4

method indicated:

5

6      Ada K. Wong                            ☒ E-Filed via CM/ECF
Jordan T. Wada                    ☐ E-Mailed

7      AKW LAW, P.C.                  ☐ Facsimile
6100 219th St. SW, Suite 480     ☐ U.S. Mail, 1st Class

8      Mountlake Terrace, WA  98043    ☐ Hand Delivery

9      ada@akw-law.com             ☐ Messenger Service
jordan@akw-law.com

10     *Attorneys for Plaintiffs*

11

12     Isabel S. Johnson               ☒ *E-Filed via CM/ECF*
Law Office of Isabel S. Johnson, PLLC  ☐ E-Mailed

13     748 Market Street, Suite #15     ☐ Facsimile
Tacoma, WA  98402          ☐ U.S. Mail, 1st Class

14     isabel@isjlaw.com            ☐ Hand Delivery

15     *Co-Counsel for Plaintiff*        ☐ Messenger Service

16

17     Ramsey E. Ramerman         ☒ *E-Filed via CM/ECF*
Everett City Attorney's Office     ☐ E-Mailed

18     2930 Wetmore Avenue, Suite 10-C  ☐ Facsimile
Everett, WA  98201          ☐ U.S. Mail, 1st Class

19     rramerman@everettwa.gov     ☐ Hand Delivery
*Attorney for City of Everett*     ☐ Messenger Service

20

21     I certify under penalty of perjury under the laws of the state of Washington that the

22

foregoing is true and correct.

23     DATED this ___ day of April, 2021.

24

25

26                   Cindy Ryden, Legal Assistant

27

**SNOHOMISH COUNTY
PROSECUTING ATTORNEY - CIVIL DIVISION**
Robert Drewel Bldg., 8th Floor, M/S 504
3000 Rockefeller Ave
EVERETT, WASHINGTON  98201-4060
(425)388-6330/FAX: (425)388-6333