THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTATE OF ADAM CHRISTOPHER JENSEN, by the Personal Representative PAULA DOW, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SNOHOMISH, *et al.*,<br><br>Defendants. | CASE NO. C20-1320-JCC<br><br>ORDER |

This matter comes before the Court on the Snohomish County Defendants' motion for partial summary judgment (Dkt. No. 37) and motion to strike (Dkt. No. 57). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for partial summary judgment and GRANTS the motion to strike for the reasons explained herein.

I.  **BACKGROUND**

This case involves the fatal shooting of Adam Jensen by the Snohomish County Sheriff's Department in the early morning hours of September 9, 2018. (*See generally* Dkt. No. 27-1.) Isabel Craig, Mr. Jensen's live-in girlfriend, had called 9-1-1 earlier that evening following what she now describes as a "disagreement" with Mr. Jensen. (*Id.* at 5–6.) At the time, they were at her home, along with Ms. Craig's three children. (Dkt. No. 37 at 3.) According to the Snohomish

County Sheriff's dispatcher, Ms. Craig called 9-1-1 seeking law enforcement assistance after Mr. Jensen pushed Ms. Craig off her bed, brandished a knife, and expressed suicidal thoughts. (Dkt. No. 40 at 13–14.) The dispatcher further indicated to responding deputies that a male voice could be heard in the background during Ms. Craig's 9-1-1 call asking "[d]o you want me to die? Do you want me to die by police?" (*Id.* at 14.)

Snohomish County Sheriff's Deputies Kevin Pelleboer and William Westsik were the first to arrive. (Dkt. No. 27-1 at 6.) It is undisputed that Deputy Pelleboer had responded to a 9-1-1 call from Ms. Craig the week prior. (*See* Dkt. Nos. 37 at 4–5, 45 at 2.) On that occasion, Ms. Craig sought assistance to remove Mr. Jensen from the home following a separate disagreement. (*Id.*) Based on this prior incident, Deputy Pelleboer was familiar with the residence and Mr. Jensen, and concluded that Mr. Jensen was "not very friendly." (Dkt. No. 40 at 3.) He shared this observation with Deputy Westsik before they entered the residence. (*Id.*)

According to the Snohomish County Defendants, on January 9, 2018, Ms. Craig greeted the two deputies at her door but declined to speak with them outside because she had children inside who would otherwise be left alone with Mr. Jensen. (Dkt. No. 37 at 6.) Ms. Craig then led the deputies into the house and upstairs, where all of the bedrooms are located. (*See* Dkt. Nos. 37 at 6–7, 45 at 3–4.) The upstairs area is comprised of a central hall, with three bedrooms leading off the hall—one for each child—and a master bedroom at the end of the hall. (*Id.*) As the deputies and Ms. Craig arrived upstairs and into the dimly lit hall, the children were in their respective rooms and Mr. Jensen was in the master bedroom with the door closed. (*Id.*) Sergeant Chad Gwordske reached the home around this same time. (Dkt. Nos. 37 at 9, 45 at 5.) He entered but remained downstairs throughout the incident. (*Id.*)

Before entering the home, Deputy Pelleboer decided to serve as "less lethal" cover and Deputy Westsik decided to serve as "lethal" cover. (Dkt. Nos. 40 at 3–4, 42 at 3–4.) Correspondingly, Deputy Pelleboer can be seen holding a taser device and Deputy Westsik can

be seen with his hand on his holstered firearm in a nanny cam[1] video as Ms. Craig leads them toward the stairs. (Dkt. No. 41 at 8, *see* Nanny Video at :55–1:05.) The video does not depict what transpired upstairs and this is where the parties' stories diverge. (*See* Dkt. Nos. 37 at 6, 45 at 5.)

Defendants allege that once the deputies and Ms. Craig arrived upstairs, Ms. Craig entered her son's bedroom. (Dkt. No. 37 at 7.) The deputies then called out to Mr. Jensen through the closed master bedroom door, notifying him that the police were there and wanted to speak with him. (*Id.*) Mr. Jensen responded that he was "not gonna do this again. I'm over this. I'm done . . . I'm not fucking around this time!" (Dkt. Nos. 40 at 5, 42 at 5.) He came out of the bedroom at a "fast walk" wearing only underwear and holding a knife by his side. (*See* Dkt. No. 37 at 7–8 (citing Dkt. Nos. 40 at 5, 42 at 5–6).) The deputies backed up as Mr. Jensen raised the knife in the dimly lit hall. (*Id.*) Deputy Pelleboer unsuccessfully attempted to tase Mr. Jensen. (*See id.* (citing Dkt. Nos. 40 at 5–6, 42 at 6).) Deputy Westsik implored Mr. Jensen to drop the knife and fired four shots with his service weapon, three of which struck Mr. Jensen's chest and one struck his foot. (*See id.* at 8 (citing Dkt. Nos. 40 at 6, 42 at 7.) Mr. Jensen collapsed towards the stairs. (*Id.*) A crime scene photograph shows an approximate 7-inch serrated metallic knife located a few feet from the top of the stairs. (Dkt. No. 38 at 5–9.)

As the incident played out, the nanny cam captured some of the muffled audio. (*See* Nanny Cam at 1:30–1:40.) The deployment of what sounds like a taser can be heard, followed in rapid succession by calls to "drop it, drop it," and then four gun shots. (*Id.*) Shortly thereafter, Mr. Jensen comes into view. He is sliding or falling down the stairs as Deputy Pelleboer backs out of the way. (Dkt. No. 40 at 6, *see* Nanny Cam at 1:40–1:50.) Sergeant Gwordske approaches

---

[1] The camera was located in the downstairs living room and was on throughout the incident. (*See* Dkt. No. 36 - Bates Dow 0027 (hereafter referenced as "Nanny Video at ____").) The entire downstairs living room, including the bottom of the stairs, is visible. The Snohomish County Defendants submitted the recording in support of their motion for partial summary judgment. (Dkt. No. 36, *see* Dkt. No. 41 at 8.) Neither party has disputed the authenticity of the recording for purposes of Defendants' motion. (*See generally* Dkt. Nos. 37, 45, 52.)

Mr. Jensen after he comes to a stop at the bottom of the stairs. (*Id.*) A few seconds later, the sergeant can be heard indicating to the deputies, who had come downstairs by this time, that Mr. Jensen was "gone." (*See* Nanny Cam at 2:30–3:00.) Sergeant Gwordske then called for emergency services. (*Id.*)

Plaintiffs' version of events differs in a number of ways. The only relevant differences, for purpose of the instant motion, are contained within Ms. Craig's declaration[2] supporting Plaintiffs' opposition brief. (*See* Dkt. No. 47.) In the declaration she indicates that, rather than immediately enter her son's room upon reaching the top of the stairs, she remained in the hall and could see Mr. Jensen open the door and proceed toward the deputies. (*Id.* at 6.) She saw "no weapon or object in [Mr. Jensen's] hands when he came out of our bedroom." (*Id.* at 7.) Mr. Jensen "then started walking towards us at a slow pace . . . he did not accelerate . . . and he was not moving in an aggressive manner. For as long as I saw [Mr. Jensen] walking, I could see his upper body, and he was not holding any object up or outward and he was not lunging forward." (*Id.* at 7.) Ms. Craig then went towards her son's room so "could not see the shots fired." (*Id.*)

Mr. Jensen came back into Ms. Craig's field of vision after he was shot. (*Id.* at 8.) She saw him "stumble[] to the ground" towards the stairs and "did not see him holding anything." (*Id.* at 8.) She could see "what appeared to be part of a taser on the floor in front of the master bedroom" but "did not see a [] knife in the common area, in the hallway, or at the top of the stairs." (*Id.*) Finally, Ms. Craig indicates that, before leaving the residence with her children through an upstairs window, she "was sitting on the landing nearby for several minutes . . . and did not see the object depicted in [the crime-scene photograph] there." (*Id.* at 8–9.)

Plaintiffs filed a complaint naming as defendants Snohomish County, the responding deputies and sergeant, the Everett City Police Department, and a variety of unidentified persons and corporations. (Dkt. No. 27-1.) The complaint asserts § 1983 claims for Fourth and

---

[2] Ms. Craig also filed a pendent declaration (Dkt. No. 56) in response to Defendant's reply brief, which Defendants move to strike (Dkt. No. 57).

Fourteenth Amendment violations based on unreasonable seizure, unreasonable use of force, and a failure to intervene; state law tort claims; and a claim for an alleged violation of Washington's Public Records Act. (*Id.* at 16–24.)

The Snohomish County Defendants move for partial summary judgment, seeking dismissal with prejudice of Plaintiffs' § 1983 claims and dismissal without prejudice of Plaintiffs' state law claims.[3] (Dkt. No. 37.) The Snohomish County Defendants assert that the individual defendants' qualified immunity precludes the § 1983 relief Plaintiffs seek, Plaintiffs cannot establish *Monell* liability against Defendant Snohomish County, and Plaintiffs have failed to state a claim based upon a failure to intervene. (*Id.* at 12–24.) Plaintiffs, in opposition, argue that disputed material facts preclude summary judgment and even if the Court were to find a lack of such facts, it should stay Defendants' motion pursuant to Federal Rule of Civil Procedure 56(d) until discovery is complete. (Dkt. No. 45.) Plaintiffs point out that no depositions have yet been taken. (*Id.* at 2.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable

---

[3] Defendants argue that the Court should decline to exercise supplemental jurisdiction if the federal claims are dismissed. (Dkt. No. 37 at 24–25.)

jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catlett*, 477 U.S. 317, 324 (1986).

### B.   § 1983 Claims Against Deputies Pelleboer and Westsik

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiffs allege that Deputies Pelleboer and Westsik violated Mr. Jensen's Fourth Amendment rights when they unreasonably seized Mr. Jensen and/or applied an unreasonable amount of force in attempting to tase and then shooting him. (Dkt. No. 27-1 at 16–17.) Accordingly, Plaintiffs must overcome Defendants' qualified immunity defense. *See Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The government official carries the burden of proving that "his conduct was reasonable under the applicable standards even though it might have violated [a plaintiff's] constitutional rights." *Houghton v. South*, 965 F.2d 1532, 1535 (9th Cir. 1992). To decide whether an officer has qualified immunity, a court engages in a two-pronged inquiry. Under the first prong, the court must decide "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Tolan v. Cotton*, 572 U.S. 650, 655–67 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (alterations in original). Under the second prong, a court must determine "whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656. Since both prongs must be satisfied, they can be considered in either order.

*Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016).

                1.   <u>Fourth Amendment Violations</u>

      Whether Mr. Jensen had a knife and how he brandished it as he advanced towards the deputies dictates whether their use of force violated his clearly established rights. *See Ventura v. Rutledge*, 978 F.3d 1088, 1090–91 (9th Cir. 2020); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153–54 (2018). Plaintiffs assert that both present a genuine issue of material fact. (Dkt. No. 45 at 16.) In support, they point to Ms. Craig's declaration, which indicates that she had a view of Mr. Jensen as he emerged from the bedroom, that he walked towards them at a "slow pace . . . he was not moving in an aggressive manner . . . he was not holding any object up or outward and he was not lunging forward." (Dkt. No. 45 at 9 (citing Dkt. No. 47 at 6–7).) Nor, according to Ms. Craig's declaration, did she see a knife on the landing after the incident. (*See* Dkt. No. 47 at 8–9.)

      Defendants, citing the "sham affidavit rule," say this declaration, (Dkt. No. 47), cannot be used to establish a genuine issue of material fact because it contradicts an earlier statement made under penalty of perjury to the Snohomish County Sheriff's Department investigators just a few hours after the incident. (Dkt. Nos. 52 at 7, 62 at 2.) In that statement, in response to the question of whether Mr. Jensen was holding anything as he emerged from the bedroom, Ms. Craig said "I think so." (Dkt. No. 55 at 12–13.) When later asked to describe where she last saw the knife that triggered the 9-1-1 call, she said "[p]robably in the bedroom and I saw something in his hand, but it was so quick in the hall, I didn't . . . look." (*Id.* at 23.)

      Under Ninth Circuit case law, "a party cannot create an issue of fact by an affidavit contradicting [] prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (citation and internal quotation marks omitted). But the sham affidavit rule "should be applied with caution" because the Court must not make credibility determinations when resolving a summary judgment motion. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Plaintiffs suggest that, regardless of its contents, Ms. Craig's initial statement cannot trigger the rule because (a) Ms. Craig is not a party to this action and (b) she did not make it

through a declaration. (Dkt. No. 62.) The Court need not address these issues. Even if the sham affidavit rule could apply to a statement made under penalty of perjury by a nonparty outside of a deposition, it would not apply here.

The differences between Ms. Craig's earlier statement and her later declaration must be considered within the context of the moment. *See Yeager*, 693 F.3d at 1081 (The parties may "explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable.") (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806–07 (1999)). Ms. Craig's initial statement was taken only hours after Deputy Westsik killed Mr. Jensen, which was precipitated by Ms. Craig's 9-1-1 call. As Plaintiffs explain, Ms. Craig was distressed, exhausted, and could not concentrate. (Dkt. No. 61 at 4.) In addition, Ms. Craig made *two* statements under penalty of perjury to investigators contemporaneous to the incident. (Dkt. Nos. 48-1 at 2, 55 at 2.) She made the second statement to Snohomish County use of force investigators three days after the shooting. (*See* Dkt. No. 48-1). In that statement Ms. Craig indicated that "I did not see a weapon or object in [Mr. Jensen's] hand when he came out of our bedroom. I do not believe Adam was trying to hurt anyone." (*Id.* at 2.)

In order for the sham affidavit rule to apply, the "inconsistency between [previous] . . . testimony and [a] subsequent affidavit must be *clear and unambiguous*." *Yeager*, 693 F.3d at 1080 (emphasis added). Said another way, the later declaration must "flatly contradict[]" the earlier testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991). That is not the case here. In the first statement, Ms. Craig said she *thought* Mr. Jensen had something in his hand. (Dkt. No. 55 at 13.) In the second statement, she affirmatively indicated that she did not see a weapon or object in his hand. (Dkt. No. 48-1 at 2.) Moreover, in neither of her contemporaneous statements did she say whether she saw a knife on the floor of the landing before exiting her home. (*See generally* Dkt. Nos. 48-1, 55.) She only mentioned this in her declaration. (*See* Dkt. No. 47.)

The Court FINDS that Ms. Craig's declaration (Dkt. No. 47) establishes a genuine issue of fact regarding whether Mr. Jensen posed a sufficient threat to demonstrate that the deputies' use of force was justified. This applies to Deputy Westsik's use of deadly force *and* Deputy Pelleboer's attempted us of his taser, which constitutes the use of "intermediate or medium" force. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).[4] Therefore, summary judgment is not warranted on Plaintiff's § 1983 claims against Deputies Pelleboer and Westsik based on alleged Fourth Amendment violations.

### 2. Failure to Intervene

Plaintiffs also assert a § 1983 claim against Deputies Pelleboer and Westsik based on a failure to intervene. (*See* Dkt. No. 27-1 at 17–18.) Defendants move for summary judgment, arguing that Plaintiffs provide no facts supporting the claim. (*See* Dkt. No. 37 at 24.) Plaintiffs do not respond to this argument. (*See generally* Dkt. No. 45.) Accordingly, the Court FINDS that summary judgment is warranted on Plaintiff's § 1983 claims against Deputies Pelleboer and Westsik based on an alleged failure to intervene.

### 3. Fourteenth Amendment Violations

Defendants also suggest in their reply brief that summary judgment is warranted on Plaintiffs' § 1983 claim against Deputies Pelleboer and Westsik for an alleged Fourteenth Amendment violation because that violation would be predicated on a Fourth Amendment violation. (*See* Dkt. No. 52 at 17; *see generally* Dkt. No. 37.) But a reply brief is not the place to first raise such an argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Even if it were, Defendants' argument is precluded by the Court's finding that genuine material issues of

---

[4] Defendants did not provide *any* legal argument supporting the notion that an attempted taser deployment would be objectively reasonable in response to a knife-wielding assailant. (*See generally* Dkt. No. 37, 52.) Absent such argument, they cannot establish that summary judgment is warranted on Plaintiffs' Fourth Amendment claims against Deputy Pelleboer for unreasonable seizure and/or use of force.

fact exist regarding an alleged Fourth Amendment violation. Defendants provide no separate basis to support summary judgment regarding a Fourteenth Amendment violation.

Accordingly, summary judgment on Plaintiff's § 1983 claims against Deputies Pelleboer and Westsik is GRANTED with respect to claims based on an alleged failure to intervene and DENIED with respect to the deputies' other alleged violations.

C. § 1983 Claims Against Sergeant Gwordske

The Snohomish County Defendants move for summary judgment on the § 1983 claims against Sergeant Gwordske, arguing that Plaintiffs do not assert that he applied any force to Mr. Jensen or provide facts suggesting that he had a realistic opportunity to intervene prior to Mr. Jensen's death. (Dkt. No. 37 at 20, 22–24.) Plaintiffs concede the use of force argument, but they argue that summary judgment on the failure to intervene violation is not warranted because Sergeant Gwordske "was the supervising sergeant . . . called to the scene and allowed deputies to rush into Jensen's home." (Dkt. No. 45 at 23.) Plaintiffs suggest discovery is needed to establish genuine factual issues on this argument. (*Id.*)

According to Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). To seek Rule 56(d) relief, "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). In Plaintiffs' counsel's declaration, she describes the need for depositions from the deputies and Sergeant Gwordske to "provide more information about the incident." (Dkt. No. 46 at 3.) This cursory statement is insufficient to establish the *specific* facts Plaintiffs hope to elicit to support their opposition to summary judgment on Plaintiffs' § 1983 claim against Sergeant Gwordske

based on an alleged failure to intervene.

Accordingly, summary judgment is GRANTED on Plaintiffs' § 1983 claims against Sergeant Gwordski.

### D. Municipal Liability

Plaintiffs allege that Snohomish County violated Mr. Jensen's Fourth and Fourteenth Amendment rights through Deputy Pelleboer and Westsik's actions, which were allegedly based on Snohomish County's customs, policies, practices, and the decisions of its policy makers. (Dkt. No. 27-1 at 16–17.) To state a claim against a municipal entity for a constitutional violation, "[a] plaintiff . . . must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit." *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016). "The [Supreme] Court has further required that the plaintiff demonstrate that the policy or custom of a municipality 'reflects deliberate indifference to the constitutional rights of its inhabitants.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1060 (9th Cir. 2016) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

In moving for summary judgment, Snohomish County argues that Plaintiffs fail to identify the County's relevant policies, practices, and procedures, or explain the connection between those policies and Deputies Pelleboer and Westsik's actions. (Dkt. No. 37 at 22.) But given the fact that discovery is far from complete, this would be expected. Plaintiffs' counsel's declaration indicates that a Rule 30(b)(6) deposition is necessary to determine the County's "policies on use of force, pattern and practice on use of force, training, and the ratification of the deputies' actions in this case." (Dkt. No. 46 at 3.) This is sufficient to meet the requirements for a Rule 56(d) motion.

Accordingly, summary judgment on Plaintiffs' § 1983 claims against Snohomish County based on alleged Fourth and Fourteenth Amendment violations is DENIED. For the reasons described above, *see supra* Parts II.B.2, II.C., summary judgment is GRANTED on Plaintiffs'

claims against Snohomish County based on an alleged failure to intervene.

### E. State Law Claims

The Snohomish County Defendants also move for summary judgment on Plaintiffs' state law claims, seeking dismissal without prejudice based upon the dismissal sought on Plaintiffs' federal claims. (*See* Dkt. No. 37 at 24–25.) But the Court has declined to dismiss some of Plaintiffs' § 1983 claims. *See supra* Parts II.B., II.C., II.D. For that reason, it declines to dismiss Plaintiffs' state-based claims. Accordingly, summary judgment on Plaintiffs' state claims is DENIED.

### F. Motion to Strike

The Snohomish County Defendants also move to strike (Dkt. No. 57) Ms. Craig's supplemental declaration (Dkt. No. 56).[5] Plaintiffs filed the declaration after Defendants filed their reply brief. Defendants point out that Plaintiffs failed to seek the Court's leave pursuant to Local Civil Rule 7(g) and, even if they did, the declaration contains material not appropriate for a surreply. (Dkt. No. 57 at 2–3.) The Court agrees. Accordingly, Defendants' motion to strike Ms. Craig's supplemental declaration is GRANTED.

## III. CONCLUSION

For the foregoing reasons, the County Defendants' motion for summary judgment (Dkt. No. 37) is GRANTED in part and DENIED in part and the County Defendants' motion to strike (Dkt. No. 57) is GRANTED. Plaintiffs' § 1983 claims against all County Defendants based upon a failure to intervene are DISMISSED with prejudice as are all § 1983 claims alleged against Sergeant Gwordski. Should the County Defendants renew their motion for summary judgment, they must wait until the discovery period has lapsed, at least for the claims directed at

---

[5] In their reply brief, the County Defendants also moved to strike portions of Plaintiffs' response brief regarding bullet trajectory information. (*See* Dkt. No. 52 at 13.) The Court need not consider this request, since it already concluded that there exists a genuine material issue regarding whether Mr. Jensen had a knife at the time of the incident and that this, and his use of the knife, would dictate whether the deputies' use of force violated his clearly established rights.

Snohomish County.

DATED this 2nd day of June 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C20-1320-JCC
PAGE - 13